Lois H. Goodman, Esq.
**McELROY, DEUTSCH, MULVANEY & CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711
Attorneys for Plaintiff
Days Inns Worldwide, Inc.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., formerly known as DAYS INNS OF AMERICA, INC., a Delaware Corporation, | |
| | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| MAYU & ROSHAN, LLC; BABU PATEL, an Individual; and URESH PATEL, an Individual, | |
| Defendants. | |

Plaintiff, Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc., by its attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, complaining of defendants Mayu & Roshan, LLC f/k/a Roshan, LLC, Babu Patel, and Uresh Patel, says:

**PARTIES, JURISDICTION AND VENUE**

1.   Plaintiff, Days Inns Worldwide, Inc., formerly known as Days Inns of America, Inc. ("DIW"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2.   Defendant Mayu & Roshan, LLC ("Roshan"), on information and belief, is a

limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at RR2, Box 13A, Gainesville, Texas 76240.

3.      Defendant Babu Patel, on information and belief, is a citizen of the State of Texas, with a principal place of business at 201 Hwy 290 E Loop, Brenham, TX 77833.

4.      Defendant Uresh Patel, on information and belief, is a citizen of the State of Texas, with a principal place of business at 201 Hwy 290 E Loop, Brenham, TX 77833.

5.      The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 & 1338, 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Roshan by virtue of, among other things, Section 17.4 of the January 15, 1999 License Agreement by and between Roshan and DIW (the "License Agreement"), described in more detail below, pursuant to which Roshan has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey. . . ."

8.      This Court has personal jurisdiction over Babu and Uresh Patel by virtue of, among other things, the terms of the Guaranty (the "Guaranty"), described in more detail below, pursuant to which Babu and Uresh Patel acknowledged that they were personally bound by Section 17 of the License Agreement, including Section 17.4 (Remedies, Choice of Venue and Consent to Jurisdiction) and Section 17.6 (Waiver of Jury Trial).

9. Venue is proper in this District pursuant to Section 17.4 of the License Agreement, inasmuch as that provision contains an express waiver by Roshan and Babu and Uresh Patel of any objection to venue in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Days Marks

10. DIW is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

11. DIW has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Days Marks"), as well as the distinctive Days Inn® System, which provides hotel services to the public under the Days Inn name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

12. DIW or its predecessors have continuously used each of the Days Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

13. DIW has given notice to the public of the registration of the Days Marks as provided in 15 U.S.C. § 1111.

14. DIW uses or has used the words "Days Inn," among others, as abbreviations of its brand name.

15. Through its franchise system, DIW markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the origin of their

3

guest lodging services, DIW allows its franchisees to utilize the Days Marks and to promote the Days Inn brand name.

16. DIW has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Days Marks as distinctly designating DIW guest lodging services as originating with DIW.

17. The value of the goodwill developed in the Days Marks does not admit of precise monetary calculation, but because DIW is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of DIW's goodwill exceeds hundreds of millions of dollars.

18. The Days Marks are indisputably among the most famous in the United States.

**The Agreements Between The Parties**

19. On or about January 15, 1999, DIW entered into the License Agreement with Roshan for the operation of a 100-room guest lodging facility located at 201 Highway 290 East Loop, Brenham, Texas, Site No. 12073 (the "Facility"). On or about January 29, 1999, the parties entered into an Amendment to License Agreement, pursuant to which the parties agreed that the name of the licensee would be changed from Roshan Corp., LLC, to its present name, Mayu & Roshan, LLC. A true copy of the License Agreement, as amended, is attached hereto as Exhibit A.

20. On or about September 17, 2003, the parties acknowledged that the Facility's guest room count was 90 rooms and not 100 rooms as specified in the License Agreement. A true copy of the September 17, 2003 Correspondence is attached hereto as Exhibit B.

21. Pursuant to the Addendum to the Agreement for Satellite Connectivity Services ("Satellite Addendum"), Roshan agreed that, in the event of an early termination of the Satellite Addendum, Roshan would pay liquidated damages in the amount of $1,000.00 to DIW. A true copy of the Satellite Addendum, dated February 19, 2003, is attached hereto as Exhibit C.

22. Pursuant to Section 5 of the License Agreement, Roshan was obligated to operate a Days Inn guest lodging facility for a 15-year term, during which time Roshan was permitted to use the Days Marks in association with the operation and use of the Facility as part of DIW's franchise system.

23. Pursuant to Section 3.1 of the License Agreement, Roshan was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by DIW.

24. Pursuant to Section 3.4 of the License Agreement, Roshan was required to operate the Facility in compliance with DIW's "System Standards," as defined in the License Agreement, including DIW's quality assurance requirements.

25. Pursuant to Section 4.8 of the License Agreement, DIW had the "unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage" (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with DIW's quality assurance requirements.

5

26. Pursuant to Section 7 and Schedule C of the License Agreement, Roshan was required to make certain periodic payments to DIW for royalties, reservation system user fees, taxes, interest, and other fees (collectively, "Recurring Fees").

27. Pursuant to Section 3.9 of the License Agreement, Roshan was required to prepare and submit monthly reports to DIW disclosing, among other things, monthly financial information, for purposes of establishing the amount of royalties and other Recurring Fees due to DIW.

28. Pursuant to Section 3.9 of the License Agreement, Roshan agreed to maintain accurate financial information, including books, records, and accounts for the Facility and, pursuant to Sections 3.8 of the License Agreement, Roshan agreed to allow DIW to examine and audit of the entries in these books, records, and accounts.

29. Pursuant to Section 11.2 of the License Agreement, DIW could terminate the License Agreement, with notice to Roshan, for various reasons, including Roshan's (a) failure to cure a default as provided in Section 11.1, and (b) Roshan's receipt of two or more notices of default in any one year period, whether or not these defaults are cured.

30. Pursuant to Section 12.1 of the License Agreement, Roshan agreed that, in the event of a termination of the License Agreement pursuant to Section 11.2, it would pay liquidated damages to DIW in accordance with a formula specified in Section 12.1 of the License Agreement.

31. Pursuant to Section 13 of the License Agreement, Roshan agreed that in the event of a termination of the License Agreement, Roshan would immediately cease using all of the Days Marks.

32. Pursuant to section 17.4 of the License Agreement, Roshan agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

33. Effective as of the date of the License Agreement, Babu and Uresh Patel provided DIW with a Guaranty of Roshan's obligations under the License Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit D.

34. Pursuant to the terms of the Guaranty, Babu and Uresh Patel agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [Licensee] Agreement."

## The Defendants' Defaults and Termination

35. Roshan has failed to operate the Facility in accordance with DIW's System Standards, in breach of its obligations under the License Agreement.

36. By letter dated October 18, 2004, a true copy of which is attached as Exhibit E, DIW advised Roshan (a) that the Facility received a failing score on three QA inspections on May 12, 2004, September 3, 2004 and October 4, 2004, and, as a result, Roshan was in default of its obligations under the License Agreement, and (b) that the Facility must cure all QA defaults on or before November 19, 2004, to avoid termination of the License Agreement.

37. On or about December 16, 2004, the Facility received a failing score on a QA inspection.

38. By letter dated December 28, 2004, a true copy of which is attached as Exhibit F, DIW advised Roshan that the License Agreement was terminated effective as of December 28, 2004, for failure to satisfy the required Quality Standards, and further advised Roshan that it was to (a) perform its post-termination obligations, including the removal of all items referring to Days Inn at the Facility, (b) immediately pay DIW the full amount of all Recurring Fees and other charges due under the License Agreement as well as Liquidated Damages as specified in the License Agreement, and (c) remove all exterior signage bearing the name and marks of Days Inn within fourteen days.

39. The termination of the License Agreement precluded Roshan from any further use of the Days Marks in or around the Facility.

40. The termination of the License Agreement precluded Roshan from any further use of the Days Marks to induce the traveling public to use the Facility in any way.

41. Since the termination of the License Agreement, Roshan continued to use the Days Marks to induce the traveling public to rent guest rooms at the Facility.

42. Since the termination of the License Agreement, Roshan used the Days Marks without authorization to rent rooms by, among other things, failing to remove Days Inn primary signage and continuing to use items bearing the Days Marks.

43. On January 12, 2005, a post termination obligations inspection of the Facility was conducted, during which it was discovered that Roshan was continuing to operate the facility as a Days Inn and continued to use the Days Marks without authorization on signage throughout the interior and exterior of the facility. A true copy of the Post Termination Obligations Checklist inspection report is attached hereto as Exhibit G.

44. By letters dated May 5, 2005 and June 29, 2005, true copies of which are attached as Exhibit H and Exhibit I respectively, DIW again advised Roshan of its post-termination obligations under the License Agreement and demanded that Roshan immediately cease operating the Facility as a Days Inn System Unit and distinguish it in all respects from its former appearance as a Days Inn guest lodging facility.

45. On June 30, 2005, a post termination obligations inspection of the Facility was conducted, during which it was discovered that Roshan was continuing to use the Days Marks on exterior exterior signage at the Facility. In addition, Roshan prohibited DIW from accessing the interior of the Facility to conduct an inspection in the interior areas. A true copy of the Post Termination Obligations Checklist inspection report is attached hereto as Exhibit J.

46. Roshan continued to misuse the Days Marks despite receiving notification from DIW to cease and desist from the misuse of the Days Marks from December 28, 2004, the date of termination, through August 12, 2005, the date of confirmation of de-identification, and to date, continues to be in default of its monetary obligations to DIW.

**FIRST COUNT**

47. DIW repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 46 of the Complaint.

48. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with

9

which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

49. Roshan marketed, promoted, and rented rooms at the Facility through the unauthorized use of the Days Marks, and such use caused confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

50. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

51. Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

52. Roshan's use of the Days Marks in connection with goods and services at the Facility, after the Days Marks became famous, caused dilution and disparagement of the distinctive quality of the Days Marks, and lessened and will continue to lessen the capacity of the Days Marks to identify and distinguish the goods and services of DIW, all in violation of Section 43(c) of the Lanham Act.

10

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), DIW demands judgment against Roshan: Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SECOND COUNT

53. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

54. Pursuant to Section 3.8 of the License Agreement, Roshan agreed to allow DIW to examine, audit, and make copies of Roshan's financial information, including books, records and accounts, relating to the gross room revenue earned at the Facility.

55. Roshan has engaged in acts and practices, as described, which amount to infringement of the Days Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

56. As a result, Roshan owes restitution and the disgorgement of profits, in an amount unknown to DIW, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from Roshan.

**WHEREFORE**, DIW demands judgment ordering that Roshan account to DIW for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Days Marks.

## THIRD COUNT

57. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Complaint.

58. On December 28, 2004, DIW terminated the License Agreement.

59. Section 12 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, Roshan shall pay liquidated damages to DIW within 30 days of termination.

60. As a result of the termination of the License Agreement, Roshan is obligated to pay DIW liquidated damages in the amount of $181,000.00, as calculated pursuant to Section 12.1 of the License Agreement and the Agreement for Satellite Connectivity Services.

61. Notwithstanding DIW's demand for payment, Roshan has failed to pay DIW the liquidated damages as required in Section 12 of the License Agreement and the Agreement for Satellite Connectivity Services.

62. DIW has been damaged by Roshan's failure to pay liquidated damages.

**WHEREFORE**, DIW demands judgment against Roshan for liquidated damages in the amount of $181,000.00, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## FOURTH COUNT

63. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 62 of the Complaint.

64. By virtue of the premature termination of the License Agreement, DIW sustained a loss of future revenue over the remainder of the fifteen (15) year term of the License Agreement.

65. If the Court determines that Roshan is not liable to pay DIW liquidated damages as required by Section 12 of the License Agreement then, in the alternative, Roshan is liable to DIW for actual damages for the premature termination of the License Agreement.

66. DIW has been damaged by Roshan's breach of its obligation to operate a Days Inn guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, DIW demands judgment against Roshan for actual damages in an amount to be determined at trial, together with interest**,** attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## **FIFTH COUNT**

67. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Complaint.

68. Pursuant to Section 7 and Schedule C of the License Agreement, Roshan was obligated to remit Recurring Fees to DIW.

69. Despite its obligation to do so, Roshan failed to remit certain of the Recurring Fees due and owing under the License Agreement in the current amount of $53,330.90.

70. Roshan's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Roshan for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SIXTH COUNT

71. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Complaint.

72. At the time of the termination of the License Agreement, Roshan was obligated to pay DIW Recurring Fees.

73. Despite its obligation to do so, Roshan failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $53,330.90

74. In addition, Roshan benefited from its wrongful use of the Days Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to DIW in return for that benefit.

75. Roshan's failure to compensate DIW constitutes unjust enrichment and has damaged DIW.

**WHEREFORE**, DIW demands judgment against Roshan for the Recurring Fees due and owing under the License Agreement, and all royalties and other Recurring Fees that should be paid to compensate DIW for the period during which Roshan misused the Days Marks and was thereby unjustly enriched, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## **SEVENTH COUNT**

76. DIW repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Complaint.

77. Pursuant to the terms of the Guaranty, Babu and Uresh Patel agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Roshan under the License Agreement.

78. Despite their obligation to do so, Babu and Uresh Patel have failed to make any payments or perform or cause Roshan to perform each obligation required under the License Agreement.

79. Pursuant to the Guaranty, Babu and Uresh Patel are liable to DIW for Roshan's liquidated damages in the amount of $180,000.00, or actual damages in an amount to be determined at trial, Roshan's Recurring Fees due and owing under the License Agreement, and for those additional Recurring Fees attributable to the period during which Roshan has misused the Days Marks.

**WHEREFORE**, DIW demands judgment against Babu Patel and Uresh Patel for damages in the amount of

(a) all liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, together with interest and costs of suit; and

(b) all profits, royalties, and other Recurring Fees that should be paid to compensate DIW for the period during which Roshan misused the Days Marks and was thereby unjustly enriched, together with interest, attorneys' fees, costs of suit and such other and further relief as this Court shall deem just and proper.

                                      **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
                                      Attorneys for Plaintiff
                                      Days Inns Worldwide, Inc.

By:    /s/ Lois H. Goodman
         Lois H. Goodman
         A Member of the Firm
         (973)622-7711
         lgoodman@mdmc-law.com

DATED: March 30, 2006

## **CERTIFICATION PURSUANT TO *L. CIV. R.* 201.1(d)(1)**

The within matter does not fall within the requirement for compulsory arbitration set forth in *Local Civil Rule* 201.1(d)(1) in that the relief sought consists of money damages in excess of $150,000.00 exclusive of interest and costs.

                                            **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
                                            Attorneys for Plaintiff

                                            By:   /s/ Lois H. Goodman
                                                 Lois H. Goodman
                                                 A Member of the Firm
                                                 (973)622-7711
                                                 lgoodman@mdmc-law.com

DATED: March 30, 2006


## **CERTIFICATION PURSUANT TO *L. CIV. R.* 11.2**

I hereby certify that the within matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding; no other action or arbitration proceeding is contemplated; and I know of no other parties who should be joined in this action at this time.

                                            **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
                                            Attorneys for Plaintiff

                                            By:   /s/ Lois H. Goodman
                                                 Lois H. Goodman
                                                 A Member of the Firm
                                                 (973)622-7711
                                                 lgoodman@mdmc-law.com

DATED: March 30, 2006

18