NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC. [formerly known as DAYS INNS OF AMERICA, INC.], a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>MAYU & ROSHAN, LLC, BABU PATEL, an Individual, and URESH PATEL, an Individual,<br><br>Defendants. | Civil Action No. 06-cv-1581 (PGS)<br><br>OPINION |

**SHERIDAN, U.S.D.J.**

Plaintiff Days Inns Worldwide, Inc. ("DIW" or "Plaintiff") moves for final judgment by default, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2), against Mayu & Roshan, LLC, Babu Patel, and Uresh Patel ("Defendants") for breach of a franchise licensing agreement ("License Agreement") and violations of the Lanham Act. For the reasons stated herein, DIW's motion will be granted.

I.

DIW, a Delaware corporation with its principal place of business in Parsippany, New Jersey, is a franchisor of guest lodging facilities. (Compl.¶¶ 1, 10). Mayu & Roshan is a limited liability corporation existing under the laws of Texas. (*Id.* ¶ 2). Babu Patel ("B. Patel") and Uresh Patel ("U. Patel") are both citizens of Texas. (*Id.* ¶¶ 4-5). Subject matter jurisdiction over this action is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. The Court has personal jurisdiction over

the defendants pursuant to the License Agreement, wherein they consented to the "personal jurisdiction of and venue in ... the United States District Court for the District of New Jersey." ( *Id.* ¶¶ 6-7; Ex. A, § 17.4).

On January 15, 1999, DIW entered into the License Agreement with Mayu & Roshan[1], for the operation of a 100-room guest lodging facility located in Brenham, Texas, Site No. 12073 (the "Facility"). (Compl. ¶ 19; Ex. A).[2] Mayu & Roshan was obligated to operate the Facility as a DIW guest lodging facility for 15 years, during which time Mayu & Roshan was permitted to use the DIW Marks in association with its operation of the Facility as part of DIW's franchise system. (Compl. ¶ 22, Ex. A § 5). According to the License Agreement, Mayu & Roshan was required to operate the Facility in compliance with DIW's "System Standards," including DIW's quality assurance requirements. (Compl. ¶¶ 23-24, Ex. A § 3.4). Furthermore, Mayu & Roshan was required to make certain periodic payments to DIW for royalties, reservation system user fees, taxes, interest, and other fees (collectively, "recurring fees"). (*Id.* ¶ 26, Ex. A § 7). Failure to "pay [DIW] when a payment is due, [or failure to] perform any ... other obligations when [the License] Agreement and the System Standards Manual require" constitutes a "default" under the License Agreement. (*Id.*, Ex. A. § 11. 1).

Under section 11.2, DIW had the right to terminate the License if, inter alia, Mayu & Roshan (a) failed to cure a default as provided in Section 11.1, and (b) received two or more notices of default in any one year period, whether or not these defaults are cured. (*Id.* ¶ 29). Termination of

---

[1] The original agreement was entered into by Roshan Corp., LLC. On January 29, 1999, the parties entered into an Amendment to the License Agreement pursuant to which the parties agreed that the name of the licensee would be changed from Roshan Corp., LLC to its present name, Mayu & Roshan, LLC.

[2] On September 17, 2003, the parties acknowledged that the Facility's guest room count was 90 and not 100 rooms as specified in the License Agreeement.

the License Agreement under section 11.2 obligated Mayu & Roshan to pay liquidated damages to DIW. (Compl. ¶ 30; Ex. A § 12. 1). B. Patel and U. Patel provided DIW with a Guaranty of Mayu & Roshan's obligations under the License Agreement, whereby they agreed to "immediately make each payment and perform or cause Licensee to perform, each unpaid or underperformed obligation of Licensee under the [License] Agreement" upon a default by Mayu & Roshan. (*Id.* ¶¶ 33-34, Ex. B).

In a letter dated October 18, 2004, DIW advised Mayu & Roshan that the facility received a failing score on three quality assurance inspections on May 12, 2004, September 3, 2004, and October 4, 2004, and as a result, Mayu & Roshan was in default of its obligations under the License Agreement and that the Facility must cure all quality assurance defaults on or before November 19, 2004 to avoid termination of the License Agreement. (*Id.* ¶¶ 36, Ex. C). On December 16, 2004, the Facility received a failing score on a quality assurance inspection. (*Id.* ¶¶ 37, Ex. C).

In a letter dated December 28, 2004, DIW notified Mayu & Roshan that it terminated the License Agreement, effective December 28, 2004, for failing to cure its default under the License Agreement. (*Id.* ¶ 38, Ex. D). The letter further informed Mayu & Roshan that it must, within 14 days, remove all items from the Facility that display or refer to the DIW marks. ( Id.). The letter also demanded immediate payment of all recurring fees and other charges, and liquidated damages as specified in the License Agreement. (*Id.*)

DIW discovered during post-termination inspections of the Facility on January 12, 2005 and June 30, 2005 that Mayu & Roshan was continuing to use DIW marks to rent rooms to the public. (*Id.* ¶¶ 43, 45). After an August 12, 2005 inspection, DIW was satisfied that the Facility was in compliance with its obligation under the License Agreement to cease using DIW marks to rent rooms to the public. (Cox Aff. ¶ 46, Ex. A.)

Plaintiff filed this action on April 4, 2006 against Mayu & Roshan, B. Patel, and U. Patel. In count one, DIW alleges that defendants violated sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)[3] and 1125(a)[4], and requests compensatory damages, treble damages, attorneys' fees, prejudgment interest, and costs. Count two requests disgorgement of profits and restitution for defendants' unauthorized use of DIW marks. Count three claims defendants owe DIW $181,000.00 in liquidated damages under the License Agreement. In the alternative, DIW seeks actual damages resulting from the premature termination of the License Agreement in count four. Count five requests $53,330.90 that plaintiffs claim defendants owe in past-due recurring fees. In count six, plaintiff seeks an unspecified amount of recurring fees "that should be paid to compensate [DIW] for the period during which Mayu & Roshan misused the DIW Marks and was thereby unjustly enriched." (Compl.¶ 75). Finally, count seven seeks to recoup all of the above monies from the individual defendants as Mayu & Roshan's Guarantors under the License Agreement.

The record indicates that Mayu & Roshan, B. Patel, and U. Patel were properly served with process. Defendants, however, failed to answer or otherwise plead with respect to the Complaint as required by Rule 12(a). On June 22, 2006, DIW petitioned the Clerk of the Court for an entry of default against the defendants pursuant to Rule 55(a). On June 23, 2006, the Clerk of the Court

---

[3] Section 1114(1)(a) provides in pertinent part: "Any person who shall, without the consent of the registrant-use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant...."

[4] Section 1125(a) provides in pertinent part: "Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation ... or as to the origin, sponsorship, or approval of ... goods [or] services ... shall be liable in a civil action...."

entered default against the defendants for failure to appear. On October 23, 2006, plaintiff submitted the instant motion, seeking default judgment against the defendants. The record indicates that DIW served defendants with notice of its motion.

II.

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990) ("When a defendant fails to appear..., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Directv, Inc. v. Asher*, 2006 WL 680533 (D.N.J. 2006) (citing *Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure* § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533 (citing *Wright, Miller, & Kane*, § 2688, at 63). The Court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *In re Industrial Diamonds*, 119 F.Supp.2d at 420 (citing *Credit Lyonnais*

*Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

III.

Before granting a default judgment, the Court is obliged to consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. *Asher*, 2006 WL 680533; *Carpenters Health and Welfare Fund v. Naglak Design*, 1995 WL 20848 *2 (E.D. Pa. 1995) (citing *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987); *Hritz*, 732 F.2d 1178, 1180). However, these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default. *Getty Petroleum Marketing, Inc. v. Saini*, 2006 WL 1344685 *2 (D.N.J. 2006).

In any event, since defendants have not made an appearance, this Court is "not in a position then to determine whether [defendants have] a meritorious defense or whether any delay is the result of culpable misconduct." *Carpenters Health*, 1995 WL 20848 *2 (E.D. Pa. 1995). In the same vein, because plaintiffs have "no other means of vindicating its claim against" defendants, plaintiffs will be prejudiced if the default is not granted. *Asher*, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"). Accordingly, the factors recommend entry of the default judgment.

Default judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim. *Directv v. DeCroce*, 332 F.Supp.2d 715 (D.N.J. 2004), rev'd on other grounds, 431 F.3d 162 (3d Cir. 2005). Because a defaulting party does not admit conclusions of law, the Court must make an independent inquiry into "whether the unchallenged facts constitute a legitimate cause of action." *Id.* (denying default for

failure to state a claim) (quoting *Wright, Miller & Kane*, § 2688, at 63).

Because "[c]onclusions drawn with respect to the legal effect of any agreement"-including whether a contract has been breached-constitute questions of law, this Court must make an independent determination as to whether defendants breached the contract. See *ATACS Corp. v. Trans World Comm., Inc.*, 155 F.3d 659, 665 (3d Cir. 1998) (citing *Linder v. Inhalation Therapy Servs., Inc.*, 834 F.2d 306, 310 (3d Cir. 1987)); *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1176 (2d Cir. 1995) (noting that "the conclusion that the contract has been breached" constitutes a "legal conclusion [ ] to be drawn from factual findings").

Here, the record indicates that plaintiff effectuated service of process on defendants. Default was entered by the Clerk. Furthermore, the record indicates that defendants were served with notice of the motion for default judgment and supporting documents on or about October 23, 2006, via regular and certified mail. Thus, the Court is satisfied that defendants had ample notice of the Complaint and of the instant motion for default judgment and chose not to respond.

Accordingly, the Court will treat the allegations as to liability in the Complaint as true and admitted by defendants. As described above, Mayu & Roshan failed to ensure the Facility's compliance with DIW's System Standards including its quality assurance requirements as required by section 3.4 of the License Agreement. This constituted a default under section 11.1. Mayu & Roshan failed to remedy this default within 30 days of receiving (repeated) written notices from DIW, and thus DIW was justified in terminating the License Agreement under section 11.2.

Furthermore, as also described above, Mayu & Roshan failed to pay all past-due recurring fees, within 10 days of receiving written notice, to DIW upon termination of the License Agreement. This failure constitutes a default under section 11.1, and as a result, gave DIW additional grounds to terminate the License Agreement under section 11.2. Thus, the Court finds Mayu & Roshan, as

well as B. Patel and U. Patel in light of the guaranty, liable for breach of the License Agreement.

DIW has also established violations of sections 32 and 43(a) of the Lanham Act. A violation of section 43(a) of the Lanham Act is established if defendants' use of the DIW mark is "likely to create confusion concerning the origin of the goods or services." *S & R Corp. v. Jiffy Lube Intern., Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (citing *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990)). To prevail on an infringement claim under section 32 of the Act, DIW must demonstrate as well that defendants' use of the mark was unauthorized. *Id.* (citing *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 137 (3d Cir. 1981)).

The Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff. *Opticians*, 920 F.2d at 195 (citing *Jaycees*, 639 F.2d at 142). DIW and Mayu & Roshan were using the same legally protectable trademark, owned by DIW. There is, therefore, no question that their concurrent use is highly likely to cause consumer confusion about Mayu & Roshan's affiliation with DIW. DIW has thus shown a violation of section 43(a).

It is also apparent that Mayu & Roshan's continued use of the trademark was unauthorized, in violation of section 32. See 15 U.S.C. § 1114(1)(a) (holding liable "[a]ny person who shall, without the consent of the registrant-(a) use in commerce any reproduction...of a registered mark...in connection with which such use is likely to cause confusion."); *ITT Industries, Inc. v. Wastecorp, Inc.*, 87 F. App'x. 287, 293 (3d Cir. 2004) ("The unauthorized use of a mark by a former licensee presents a particular danger of confusion to the public. It has been described as a fraud on the public, since they are led to think that the ex-licensee is still connected with the licensor."). DIW formally terminated the License Agreement on December 28, 2004, rendering any subsequent use of the DIW mark by defendants violative of section 32. Defendants continued to use the mark until approximately August 12, 2005. Thus, DIW has shown a violation of section 32.

The public concern for enforcing the Lanham Act and contracts such as here weighs in favor of entering default judgment in this matter. The failure to enter a default judgment would prejudice DIW in its ability to enforce its rights under the Lanham Act and the License Agreement. There is no evidence that Mayu & Roshan's failure to answer the summons and Complaint in this matter or to respond to the motion for default judgment may be attributed to a good-faith explanation, mistake, or excusable neglect. After reviewing plaintiff's Complaint and the affidavits of Lois Goodman and Valerie Capers Workman in support of the motion for default judgment, the Court is satisfied that plaintiff has sufficiently established the factors necessary to warrant entry of a default judgment on its breach of contract and Lanham Act claims.

IV.

The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Under Rule 55(b)(2) a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages." However, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary and a district court may enter final judgment. Fed.R.Civ.P. 55(b)(1); *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003); *Comdyne I*, 908 F.2d at 1149. A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS Assocs.*, 318 F.3d at 19. "Such situations include actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." *Id.* at 19-20 (internal quotations omitted).

Even when faced with claims for uncertain damages a district court may still, using its

discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *Id.* at 21 (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Here, DIW seeks a combination of liquidated and unliquidated (and uncertain) damages from defendants. Specifically, it seeks past-due recurring fees, interest on the past-due recurring fees, liquidated damages, interest on the liquidated damages, infringement damages under the Lanham Act, and attorneys' fees and costs. The Court will address each in turn.

a. Recurring Fees

Under the umbrella of "recurring fees," section 7 of the License Agreement requires defendants to pay royalties, service assessment fees, taxes, and interest "on any past due amount ... at a rate of 1.5 percent per month." (Compl.Ex.A). DIW seeks $42,518.00 in recurring fees, and has attached an itemized statement of those fees to the Cox Affidavit. (Workman.Aff.¶ 38-39, Ex. B.) Thus, the Court is satisfied that DIW has demonstrated the amount of recurring fees owed by defendants, and will grant DIW default judgment in the amount of $42,518.00.[5]

b. Interest on Past-Due Recurring Fees

Section 7.3 of the License Agreement applies interest on past-due recurring fees at a rate of 1.5 percent per month "accruing from the due date until the amount is paid." (Compl.Ex.A). One-and-a-half percent of the past-due recurring fees, $42,518.00, is equal to approximately $637.77

---

[5] DIW originally sought $53,330.90 in past-due recurring fees in count five of its Complaint. (Compl.¶ 69). DIW does not explain why this figure has changed in the Workman Affidavit, submitted with its motion for default judgment; however, because this figure is lower than the recurring fees sought in the Complaint, and because DIW provided documentation substantiating the $42,518.00 figure (Workman Aff., Ex. B), the Court will rely on this lesser figure.

in monthly interest. This figure, multiplied the number of months that elapsed from January 7, 2005 (10 days after the date of termination), until May 1, 2007, the rescheduled return date of this motion, equals $17,734.04. The License Agreement provides for the interest DIW requests, and thus, the Court is satisfied that DIW is entitled to default judgment for interest on the past-due recurring fees in the total amount of $17,734.04.

### c. Liquidated Damages

In the event of a termination of the License Agreement under section 11.2, section 12.1 obligates Mayu & Roshan to pay liquidated damages to DIW. Section 12.1 contains a formula for computing the liquidated damage amount designed to compensate DIW for the revenue it would lose as a result of the premature termination of the License Agreement. (Workman Aff., ¶ 41-45). Mayu & Roshan obligated itself to pay, within 30 days of termination, the greater of "an amount equal to the sum of accrued Royalties and Basic Reservation Charges during the immediately preceding 24 full calendar months," or "the product of $2,000 multiplied by the number of guest rooms in the Facility." (Id. ¶ 45, Ex. A, § 12. 1). Plaintiff seeks the product of $2,000.00 multiplied by 90, the number of guest rooms in the Facility: $180,000.00. Additionally, pursuant to the Addundum Agreement for Satellite Connectivity Services, Mayu & Roshan agreed that in the event of an early termination of the Satellite Addendum, Mayu & Roshan would pay liquidated damages in the amount of $1,000.00 to DIW. (*Id.* ¶ 47). Thus, defendants owes $181,000.00 in liquidated damages. No further evidence is required to substantiate this amount. See *KPS Assocs.*, 318 F.3d at 20. Thus, the Court will grant DIW default judgment in the amount of $181,000.00 in liquidated damages.

### d. Interest on Liquidated Damages

DIW asserts that it is entitled to $73,305.00 in interest on the liquidated damages amount, calculated at a rate of 1.5 percent per day starting January 28, 2003 (30 days after the termination

date), and continuing through the May 1, 2007 return date. (Workman Aff.¶ 49). The License Agreement does not contain a provision requiring defendants to pay interest on liquidated damages. Under New Jersey law[6] however, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." *Cooper Distrib. Co. v. Amana Refrigeration*, 62 F.3d 262, 284 (3d Cir.1995) (citing *Meshinsky v. Nichols Yacht Sales, Inc.*, 541 A.2d 1063, 1070 (N.J.1988)). Pre-judgment interest can be awarded on either liquidated or unliquidated damages, *Geroge H. Swatek, Inc. v. North Star Graphics, Inc.*, 587 A.2d 629, 632 (N.J.Super.Ct. App.Div. 1991), in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." *Id.* (quoting *Ellmex Constr. Co. Inc. v. Republic Ins. Co. of Am.*, 323 A.2d 495, 512 (N.J. 1974)). The "basic consideration" in awarding pre-judgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled. *County of Essex v. First Union Nat'l Bank*, 891 A.2d 600, 608 (N.J. 2006).

Here, because DIW has been denied use of the $181,000.00 liquidated damages amount since it became due, the Court is satisfied that awarding DIW interest is appropriate. Accordingly, default judgment for interest on liquidated damages will be entered in the amount of $73,305.00.

---

[6] Section 17.5 of the License Agreement states that "[t]his Agreement will be governed by and construed under the laws of the State of New Jersey." (Compl., Ex. A). "A contractual choice of law provision applies, with certain limitations, to issues that the parties 'could have resolved by an explicit provision' of the contract." *Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 465 (3d Cir.2006) (citing *Restatement (Second) of Conflicts of Law* § 187(1)). Because the application of interest to liquidated damages is an issue the parties could have resolved by provision in the License Agreement, the Court will give effect to the choice-of-law provision, and apply New Jersey law.

e. Infringement Damages

Section 35 of the Lanham Act allows a victorious plaintiff to recover, inter alia, "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). Additionally, a district court may, depending on the circumstances of the case, use its discretion to treble the actual damage award. *Id.* To determine the amount of damages sustained, some courts have used the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement. See *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208-08 (3d Cir. 1999) (en banc) (citing, among others, *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1519-20 (11th Cir. 1990), and *Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg. Inc.*, 597 F.2d 71, 75-76 (5th Cir. 1979)); see also *DIW Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) ("Royalties normally received for the use of a mark are the proper measure of damages for misuse of those marks." (internal quotations omitted)).

DIW seeks $11,697.73 in damages for Mayu & Roshan's infringement from January 12, 2005 to June 30, 2005, the last date on which infringement could be confirmed. (Workman Aff. ¶ 50). The Facility's average monthly reported gross room revenue from January 1, 2003 through December 31, 2004, was $32,721.00. (Workman Aff. ¶ 52). Pursuant to sections 7.1.1 and 7.1.2 of the License Agreement, Mayu & Roshan was obligated to pay 6.5 percent of its gross room revenues to DIW, which equals average monthly Recurring Fees of $2,126.86. Based on that amount, DIW estimates the amount of Recurring Fees that would have been paid in gross room revenue earned at the Facility during the period of infringement to be $11,697.73. (Workman Aff. ¶ 53).

DIW requests that the Court treble the infringement damages. (Workman Aff. ¶ 54). Under 15 U.S.C. § 1117(b), the Court "[i]n assessing damages under [§ 1117(a) ]...shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever

is greater,...in the case of any violation of section 32(1)(a) of this Act (15 U.S.C. § 1114(1)(a))." Treble damages are only to be imposed, however, if the defendant's infringement was intentional, knowing, or willfully blind. See *Microsoft Corp. v. CMOS Techs*., 872 F. Supp. 1329, 1339-41 (D.N.J. 1994) (citing *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588-90 (7th Cir. 1989) (Posner, J.)). The record here demonstrates that, at the very least, Mayu & Roshan's infringement was willfully blind. Mayu & Roshan was informed by DIW that it was required to remove the DIW mark after the December 28, 2004 termination, and that its failure do so constituted "willful trademark infringement." Mayu & Roshan proceeded to infringe DIW's trademark until at least June 30, 2005.

Furthermore, an "extenuating circumstance[ ]" that would justify not imposing treble damages does not exist in this case. Congress has indicated that under § 1117(b), "it will be a rare case in which a defendant who has trafficked in goods or services using a mark that he or she knows to be counterfeit can show that he or she should not be assessed treble damages." *Microsoft Corp.*, 872 F.Supp. at 1339 (quoting Joint Explanatory Statement, 130 Cong. Rec. H. 12,076 at 12, 083 (Oct. 10, 1984)). The Court has no reason to believe that this is such a rare case. Thus, the Court will treble the damage award of $11,697.73, and accordingly, default judgment for infringement damages under the Lanham Act will be entered in the amount of $35,093.19.

### f. Attorneys' Fees & Costs

Although section 17.4 of the License Agreement requires the "non-prevailing party [to] pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement," (Compl., Ex. A.), DIW has failed to support its claim for $4,549.40 in attorneys' fees and costs. The conclusory allegations in the Goodman Affidavit will not suffice. (See Aff. of Lois H. Goodman in Further Supp. of Pl.'s Motion for Def. J. ¶¶ 4-5). The Court will require descriptive time entries from counsel's billing

records to be reviewed *in camera*. Otherwise, the Court will schedule a Rule 55(b)(2) damages hearing on the issue.

V.

In sum, the Court finds Defendants Mayu & Roshan, LLC, Babu Patel, and Uresh Patel liable for breach of contract and for violations of the Lanham Act and will enter default judgment for plaintiff in the amount of $349,650.23. As for DIW's request for attorneys' fees and costs, a damages hearing is appropriate under the circumstances, unless within 30 days DIW provides the necessary supplemental information referred to above.

June 6, 2007
*s/*Peter G. Sheridan
PETER G. SHERIDAN, U.S.D.J.